# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

Lina Trivedi,

       Plaintiff,

                              **COMPLAINT**
                              Case No.: 17-1526
                              Jury Trial Demanded

       vs.

Web Bank,

       Defendant.

## NATURE OF THE ACTION

1. This is an action brought by a consumer for violations of the Wisconsin Consumer Act, Wis. Stat. § 421, *et seq.*, Wis. Stat. § 100.18, the Telephone Consumer Protection Act, 47 U.S.C. § 227, and his common-law right to privacy.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction exists over Plaintiff's claims pursuant to the parties' Agreements identified below.

## PARTIES

3. Lina Trivedi (hereinafter "Plaintiff") is a natural person over 18 years of age who at all times relevant to this Complaint resided in Beaver Dam, Wisconsin. Trivedi is a citizen of Wisconsin.

4. Web Bank (hereinafter "Defendant") is an association organized under the national banking laws. Defendant has a principal place of business located at 215 S State Street, Suite 1000, Salt Lake City, UT 84111. Web Bank is a citizen of Utah.

# FACTUAL ALLEGATIONS

5. Plaintiff is a "customer" as defined by Wis. Stat. § 421.301(17).

6. Defendant is a "debt collector" as defined by Wis. Stat. § 427.103(3); all telephone calls placed by Defendant to Plaintiff's cellular telephone constitute "debt collection" as defined by Wis. Stat. § 427.103(2); and the amount that Defendant was attempting to collect constitutes a "claim" as that term is defined at Wis. Stat. § 427.103(1).

7. Web Bank issued Defendant a Fingerhut credit card.

8. Web Bank is and was the original creditor on the Fingerhut card.

9. Defendant serviced the Fingerhut card.

10. The Fingerhut Agreement reflects "consumer transactions" as defined by Wis. Stat. § 421.301(13).

11. Plaintiff used her Fingerhut credit card. She subsequently fell on hard times and got behind on her payments. Defendant then began calling Plaintiff's cell phone number (414)-795 ____ to collect.

12. In or about, November 2015, Plaintiff told Defendant to stop calling her.

13. The Defendant's calls were very distressing to Plaintiff because her daughter was undergoing multiple medical procedures during this period and Plaintiff had no money and could not pay.

14. Nonetheless, the Defendant called Plaintiff over one hundred times after she demanded that the calls stop.

15. All telephone calls placed by Defendant to Plaintiff's cellular telephone utilized an "Automatic Telephone Dialing System" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1). An

ATDS means equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator to dial such number.

16. The FCC has also deemed predictive dialers to be ATDS.

17. Plaintiff answered many of Defendant's telephone calls. Each time she answered there was a clear pause before she was connected to a call center employee of the Defendant. The pause prior to connection to a live call center employee is an indication that an ATDS was being used. The volume of calls Plaintiff received also indicates use of an ATDS.

18. Plaintiff also received over one hundred pre-recorded voicemails from Defendant after she revoked her consent.

19. None of the telephone calls Defendant placed to Plaintiff's cellular telephone were made for emergency purposes.

20. Defendant made over 100 calls to Plaintiff without her prior express consent, as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

## COUNT I
## NEGLIGENT VIOLATION(S) OF THE
## TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. § 227, *ET SEQ.*

21. The foregoing paragraphs are all realleged as though fully set out herein.

22. The Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* was designed to prevent telephone calls such as the ones described herein and to protect the privacy of consumers, such as Plaintiff. "Voluminous consumer complaints about abuse of telephone technology prompted Congress to pass the Telephone Consumer Protection Act." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

23. In enacting the Telephone Consumer Protection Act, Congress intended to give consumers a choice as to how corporate entities may contact them and made specific findings

that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." Telephone Consumer Protection Act, Pub. L. No. 102-243, § 11; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838 at *4 (N.D.Ill. Aug. 10, 2012) (citing congressional findings on Telephone Consumer Protection Act's purpose).

24. Congress also specifically found that "the evidence presented to Congress indicates that automated or prerecorded telephone calls are a nuisance and an invasion of privacy, regardless of the type of call ***." *Id.* at §§ 12-13; *see also Mims*, 132 S.Ct. at 744.

25. As Judge Easterbrook of the United States Court of Appeals for the Seventh Circuit explained in a Telephone Consumer Protection Act case:

> The Telephone Consumer Protection Act *** is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Telephone Consumer Protection Act curtails the use of automated dialers and prerecorded messages to cellular telephones ***. An automated telephone call to a landline telephone can be an annoyance; an automated telephone call to a cellular telephone call adds expense to an annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

26. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

27. "When evaluating the issue whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually store, produce, or call randomly or sequentially

generated telephone numbers, it need only have the capacity to do it." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).

28.     The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the Telephone Consumer Protection Act, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

29.     As a result of Defendant's negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B).

30.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## COUNT II
## KNOWING AND WILLFUL VIOLATION(S) OF THE
## TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. § 227, *ET SEQ.*

31.     The foregoing paragraphs are all realleged as though fully set out herein.

32.     Defendant intended to make the calls to Plaintiff.

33.     Defendant intentionally disregarded Plaintiff's requests that it stop calling her.

## COUNT III
## VIOLATION(S) OF THE WISCONSIN CONSUMER ACT
## UNLAWFUL DEBT COLLECTION – WIS. STAT. § 427

34.     The foregoing paragraphs are all realleged as though fully set out herein.

35.     By calling Plaintiff over one hundred times, filling up Plaintiff's voicemail, and continuing to do so after Plaintiff disclosed her personal circumstance and requested to Defendant to stop calling, Defendant communicated with such frequency and in such a manner that could reasonably be expected to threaten or harass the Plaintiff, in violation of Wis. Stat. § 427.104(1)(g).

## COUNT IV
## INVASION OF PRIVACY

36. The foregoing paragraphs are realleged as though fully set out herein.

37. Defendant's persistent calls violated Plaintiff's right to privacy.

38. Defendant's calls caused Plaintiff stress, anxiety, and mental anguish.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. As a result of Defendant's negligent violations of 47 U.S.C. § 227, *et seq.*, $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B).

B. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227, *et seq.*, treble damages, as provided by statute, up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

C. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

D. Pursuant to Wis. Stat. § 427.105(1), damages for emotional distress and mental anguish.

E. Pursuant to Wis. Stat. § 425.308, costs and reasonable attorney's fees.

F. Any other relief the Arbitrator may deem just and proper.

**Plaintiff demands a trial by jury.**

Respectfully submitted this 6th day of November, 2017.

*Attorneys for the Plaintiff*

By: /s/ Michael Lueder

**HANSEN REYNOLDS LLC**
Michael C. Lueder, State Bar No. 1039954
Email: mlueder@hansenreynolds.com
316 N Milwaukee Street, Suite 200
Milwaukee, Wisconsin 53202
Telephone: (414) 273-8474
Facsimile: (414) 455-7676